# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| **The estate of ROBERT CATCHER; JAMIE LUKER**, an Oklahoma resident; **PAULA MATTEUZZI**, an Oklahoma resident; **ROBERT VEST**, an Oklahoma resident; and **CATHERINE AND DONALD MARTIN**, individually, and as husband and wife, Oklahoma residents, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 09-CV-41-TCK-FHM

## OPINION AND ORDER

Before the Court are Defendant Paula Matteuzzi's ("Matteuzzi") Motion for Leave of Court to File First Amended Counterclaim (Doc. 73) and Motion to Modify Scheduling Order (Doc. 106).[1]

**I.      Background**

On June 11, 2005, Stephen Richardson ("Richardson") was driving a van owned by Multimedia Games, Inc. ("Multimedia") and collided with Defendants, who were riding or driving motorcycles. At the time of the accident, Multimedia had assigned the van to its employee, Kevin Conover ("Conover"), and Conover had taken the van to a lake to go fishing and camping with Richardson. The parties dispute whether Multimedia told Conover that he could use the van for

---

[1] Both motions were originally filed by Defendants Robert E. Catcher ("Catcher"), Jamie Luker ("Luker"), Matteuzzi, and Robert Vest ("Vest") (collectively "Defendants"). However, subsequent to the filing of the motions, Plaintiff and Defendants Catcher, Luker, and Vest filed a Joint Stipulation of Partial Dismissal With Prejudice, wherein the parties dismissed with prejudice all claims and counterclaims between them. (*See* Doc. 109.) Thus, Matteuzzi is the only remaining movant.

personal use. Plaintiff Federal Insurance Company ("Federal") was the insurance carrier for Multimedia at the time of the accident. Specifically, Federal issued two policies to Multimedia that were in effect from September 30, 2004 to September 30, 2005 – namely, (1) a Commercial Automobile Insurance Policy, No. (04) 7325-51-79; and (2) a Commercial Umbrella Policy, No. 7984-68-43 DAL (collectively "Federal policies"). (*See* Compl. ¶¶ 20, 22.)

On June 17, 2005, Conover gave a recorded statement wherein he stated that: (1) Multimedia did *not* know he was using the van for personal use on the day of the accident, and (2) he had *not* given permission to Richardson to use the van on June 11, 2005. In two subsequent statements, Conover changed his testimony and stated that he *had* given Richardson permission to drive the van on June 11, 2005. In an Affidavit executed on August 11, 2010, Conover again changed his testimony, stating that his prior testimony, wherein he represented that he gave permission to Richardson to use the van, was untruthful. (Conover Aff., Ex. 1 to Pl.'s Supplemental Reply in Opp'n to Defs.' Mot. for Leave to File First Am. Countercl. (explaining that he gave untruthful testimony "because [he] was concerned that legal charges were going to be filed against [his] friend, [R]ichardson, because [Richardson] had taken the Multimedia van to the convenience store without [his] permission or knowledge").) At the time of the accident, Richardson was fifteen (15) years old.

By letter dated March 14, 2006, Federal's attorney, Ann Allison ("Allison"), informed Defendants' attorneys that its "investigation revealed that [Richardson] was not authorized to drive the Multimedia van on the day of the accident." (March 14, 2006 Letter, Ex. 1 to Pl.'s Obj. to Defs.' Mot. for Leave of Court to File Am. Countercl., at 1.) Under such circumstances, Allison stated that "arguably owing by [Federal] on behalf of [Multimedia] is the statutory minimums of

$10,000/$20,000 pursuant to Okla. Stat. tit 47 § 7-204(A)(1) and (2)[,] and [Federal] is prepared to tender those limits." (*Id.* at 2.) Federal claims that this tender was rejected by Defendants.

On April 26, 2006, Defendants filed multiple lawsuits against Richardson in Wagoner County, claiming that Richardson's negligence caused their injuries ("Wagoner County lawsuits"). On August 4, 2006, Richardson, through his attorney, made a demand on Federal to provide a defense for Richardson in the Wagoner County lawsuits. In a letter to Richardson's attorney dated December 6, 2006 ("December 6, 2006 Letter"), Federal stated: "Our investigation of this matter does not indicate that [Richardson] is a covered person under Multimedia's policy. However, a detailed coverage opinion is being prepared and will be forwarded to you under separate cover within 10 days." (December 6, 2006 Letter, Ex. 5 to Pl.'s Supplemental Reply in Opp'n to Defs.' Mot. for Leave to File First Am. Countercl.) The record does not include a subsequent coverage opinion sent within ten (10) days of the December 6, 2006 Letter as referenced therein.

Rather, the record includes an April 11, 2007 letter wherein Federal provided a more detailed coverage analysis to Richardson's attorney ("April 11, 2007 Letter"). The April 11, 2007 Letter begins by stating:

> This will further acknowledge receipt by Great Northern Insurance Company (Great Northern) and Federal Insurance Company (Federal) of your demand for coverage to be provided to your client, [Richardson], for claims and suits arising out of the June 11, 2005 accident. Our file indicates that we previously provided you with certified copies of the (2) captioned policies. Your letter dated March 12, 2007 indicates that you did not receive a copy of the Multimedia Games' Business Auto Policy.[2] Accordingly, I have requested another certified copy of this policy for your review. Our response to your demand for defense and indemnification of [Richards] follows herein.

---

[2] The March 12, 2007 letter was not provided by the parties.

3

> We have received and reviewed the Petitions filed in the District Court in and for Wagoner County, State of Oklahoma against Lynn Richardson as parent and legal guardian of [Richardson], a minor. After reviewing these suits, it is Great Northern and Federal's position that no coverage exists for [Richardson] nor his parent(s) or legal guardian. The basis for this decision will be discussed more fully below.

(April 11, 2007 Letter, Ex. A to Defs.' Supplemental Reply Suggestions in Supp. of Their Mot. for Leave to File First Am. Countercl., at 1.) The letter then outlines the following findings of Federal's investigation: (1) Conover "was not using the Multimedia [van] with express or implied permission during his fishing trip to Wagoner County"; (2) "Conover had no right or authority to extend permission to others, including [Richardson]"; and (3) "[Richardson] admitted to the investigating officers at the scene of the accident that he did not have permission to operate the vehicle." (*Id.* at 3.) Based on these findings and the relevant language from the Federal policies, as further outlined in the April 11, 2007 letter, Federal concluded that Richardson did not meet the definition of an "insured" under the Federal policies. Therefore, Federal stated that it would not defend or indemnify Richardson and that any judgment obtained against him and/or his parents would be their responsibility. (*See id.* at 3, 5.)

On December 16, 2008, Richardson and Defendants entered into consent judgments in the Wagoner County lawsuits against Richardson and in favor of Defendants. Richardson and Defendants also entered into a Covenant Not to Execute, which generally provided that Defendants would not seek to execute the judgments against Richardson, except to the extent they could collect insurance proceeds. Thereafter, Federal brought this declaratory judgment action, seeking a declaration that it did not have a duty to indemnify Defendants for the damages claimed in the Wagoner County lawsuits. Defendants filed a counterclaim against Federal, seeking "a declaration that [Defendants] are entitled to the proceeds of the aggregate sum of all applicable insurance

4

policies to satisfy the judgments entered in their favor by the Wagoner County District Court." (Defs.' Answer and Countercl. 11.) The Counterclaim also claimed that Federal should be "barred from attempting to re-litigate all findings of fact and conclusions of law made [in the Wagoner County lawsuits]." (*Id.*)

Subsequent to the initiation of this lawsuit, Richardson executed an assignment of all bad faith and breach of contract claims against Federal ("Assignment"). (*See* Assignment, Ex. B to Defs.' Reply Suggestions in Supp. of Their Mot. for Leave of Court to File First Am. Countercl.) The Assignment states:

> The Undersigned, Stephen Richardson (hereinafter "Assignor") authorizes, recognizes, and assigns to Paula Matteuzzi, The Estate of Robert E. Catcher, Robert Vest and Jamie Luker (hereinafter "Assignees") for the sole consideration of One Hundred Dollars ($100.00), the receipt and sufficiency of which is hereby acknowledged, any and all bad faith and breach of contract claims against Federal Insurance Company (hereinafter "Federal") and/or The Chubb Group of Insurance Companies (hereinafter "Chubb") related to the investigation, claims handling and/or defense of claims advanced against him with respect to a June 11, 2005 automobile accident along State Highway 41 in Wagoner County, Oklahoma that Assignor now has or may have in the future, including but not limited to claims based on bad faith refusal to defend, bad faith refusal to indemnify, bad faith refusal to settle, negligent and/or reckless claims handling and/or bad faith refusal to pay known insurance coverage and to any other claims recognized under Oklahoma law.
>
> The Undersigned intends to effectuate a valid assignment of all bad faith and breach of contract claims identified herein under the laws of the State of Oklahoma and pursuant to 60 O.S. § 313.
>
> The Undersigned does not warrant the value or validity of any of the claims assigned herein. Any and all risks associated with the validity of this assignment and/or the value or validity of the assigned claims will be born solely by Assignees.

(*Id.*)

Matteuzzi now seeks leave to file a First Amended Complaint alleging the following four claims: (1) "Res/Judicata/Collateral Estoppel," wherein Matteuzzi alleges that Federal should be

5

"precluded from attempting to re-litigate the liability and damages determinations set forth in the final judgments entered in the underlying Wagoner County lawsuits . . . . ," (First Am. Countercl., Ex 1 to Defs.' Mot. for Leave of Court to File First Am. Countercl., at 2); (2) "Insurance Coverage," wherein Matteuzzi "seek[s] a declaration that [she] [is] entitled to the proceeds of the aggregate sum of all applicable insurance policies to satisfy the judgments entered in [her] favor [in] the Wagoner County [lawsuits] and that Federal is also responsible to the full extent of the underlying final judgments," (*id.* at 9); (3) "Bad Faith Failure to Unconditionally Pay Known Insurance Coverage," wherein Matteuzzi alleges Federal acted in bad faith in failing to pay its known minimum insurance coverage to Richardson and seeks a "declaration and judgment against [Federal] and/or Multimedia Games insurers in the amount of the minimum statutory coverage compelled by the Oklahoma Compulsory Insurance Law," (*id.* at 11-12); and (4) "Bad Faith Refusal to Defend," wherein Matteuzzi alleges that Federal acted in bad faith in refusing to defend Richardson in the Wagoner County lawsuits, (*id.* at 12-13).[3] Federal objects to the inclusion of bad faith claims in the amended counterclaim, arguing that such claims are futile.

**II.     Standard**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave [to amend] when justice so requires." District courts have wide discretion to allow amendments "in the interest of just, fair or early resolution of litigation." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). "The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*,

---

[3] The Court will collectively refer to the third and fourth claims as the "bad faith claims."

451 F.3d 1196, 1204 (10th Cir. 2006) (internal citation omitted). "[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Id.* (internal citation omitted).

District courts generally deny leave to amend only on a "showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (internal quotation omitted); *see Corporate Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009) (noting that the non-moving party bears the burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice).

When futility of amendment is at issue, as in the instant case, a court may deny a motion for leave to amend "if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted." *Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007) (internal citations omitted). "In order to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [("Rule 12(b)(6)")]." *Id.* (internal citations omitted). The inquiry under Rule 12(b)(6) is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In conducting this inquiry, a court must "assume the truth of the plaintiff's well-pleaded

7

factual allegations and view them in the light most favorable to the plaintiff." *Schneider*, 493 F.3d at 1177.

**III. Discussion**

In objecting to Matteuzzi's Motion for Leave of Court to File First Amended Counterclaim, Federal argues that the proposed bad faith claims are futile because the Assignment is invalid and Matteuzzi therefore does not have standing to bring such claims.[4]  Specifically, Federal argues that the Assignment is invalid because: (1) the Assignment is prohibited by Okla. Stat. tit. 12, § 2017(D) ("Section 2017(D)"); (2) Richardson does not have an assignable claim for breach of contract against Federal because Richardson has no damages from Federal's alleged breach of contract; (3) "Richardson has no rights in a claim of bad faith that he could assign to [Matteuzzi because] Federal satisfied all of its duties to Richardson," (Pl.'s Supplemental Reply in Opp'n to Defs.' Mot. for Leave to File First Am. Countercl. 6); and (4) the statute of limitations bars any claim for bad faith. Federal also argues that the First Amended Counterclaim should not be permitted because it is asserted for an allegedly improper purpose.

---

[4] These arguments are advanced in Federal's Supplemental Reply in Opposition to Defendants' Motion for Leave to File First Amended Counterclaim. (*See* Doc. 101.) In Federal's initial response to the motion for leave to amend, filed before the Assignment was executed, Federal argued Defendants did not have standing to assert the counterclaims at issue because: (1) Richardson had not assigned such claims to Defendants, and Defendants did not have a contractual or statutory relationship with Federal; and (2) Defendants were not third party beneficiaries to Federal's policies. (*See* Doc. 79.) Given the subsequent Assignment, these arguments are moot.

A.  **Futility**

   1.  Section 2017(D)

Section 2017(D) states as follows: "The assignment of claims not arising out of contract is prohibited. However, nothing in this section shall be construed to affect the law in this state as relates to the transfer of claims through subrogation." Okla. Stat. tit. 12, § 2017(D). Federal argues that because a claim for bad faith is based in tort, Richardson's assignment of "any and all bad faith" claims to Matteuzzi, (*see* Assignment, Ex. B to Defs.' Reply Suggestions in Supp. of Their Mot. for Leave of Court to File First Am. Countercl.), is invalid as a matter of law, rendering the bad faith claims in the First Amended Complaint futile. (*See* Pl.'s Supplemental Reply in Opp'n to Defs.' Mot. for Leave to File First Am. Countercl. 9-10.) In response, Matteuzzi argues that although personal torts may not be assigned under Oklahoma law, a claim for bad faith does not constitute such a tort. Rather, citing *Chimney Rock Limited Partnership v. HongKong Bank of Canada*, 857 P.2d 84 (Okla. Civ. App. 1993), Matteuzzi argues that a claim for bad faith represents a "hybrid claim" that actually arises out of contract. (Defs.' Supplemental Reply Suggestions in Supp. of Their Mot. for Leave to File First Am. Countercl. 5.)

The Court agrees with Matteuzzi. Although not involving the precise claim at issue in the instant case, *Chimney Rock* strongly suggests that a claim for bad faith falls outside the prohibitive parameters of Section 2017(D). In *Chimney Rock*, the Court of Appeals of Oklahoma reversed the district court's finding that defendant's counterclaims for wrongful interference with business relations and conspiracy to wrongfully interfere with business relations could not be assigned pursuant to Section 2017(D). The court set out to determine whether such claims were "torts arising out of contract or pure torts [that would be prohibited by Section 2017(D)]." *Id.* at 88. The court

9

held that "the alleged torts arose out of contract" because they were "grounded in the contracts and would not be capable of existing except for the contracts." *Id.* The same reasoning applies in the instant case. A claim of bad faith arises out of an "implied covenant upon all contracting parties, that neither party . . . will act to injure the parties' reasonable expectations nor impair the rights or interests of the other to receive the benefits flowing from the contractual relationship." *Embry v. Innovative Aftermarket Sys. L.P.*, --- P.2d ----, 2010 WL 4736729, at * 1 (Okla. 2010). But for the existence of a contract between the parties, no claim for bad faith could exist. Therefore, like the claim of interference with business relations analyzed in *Chimney Rock*, a claim for bad faith is "grounded in the contrac[t] and would not be capable of existing except for the contrac[t]." *Chimney Rock*, 857 P.2d at 88. The Court therefore relies on *Chimney Rock* in finding that a bad faith claim is outside of the purview of Section 2017(D) and can therefore be assigned. Given this finding, the Court declines to find the First Amended Counterclaim to be futile on such a basis.

2. Breach of Contract Damages

Further, Federal argues that Richardson is unable to assign a claim for breach of contract because he has no damages associated with this claim due to the execution of the Covenant Not to Execute. Federal therefore contends that "[t]he purported assignment of Richardson's claims is . . . limited to Richardson's claim against Federal for its alleged breach of the duty of good faith and fair dealing, *i.e.*, bad faith, arising from Federal's denial of a defense to Richardson." (Pl.'s Supplemental Reply in Opp'n to Defs.' Mot. for Leave to File First Am. Countercl. 5.)

The Court finds Federal's argument unclear. The First Amended Counterclaim does not include a breach of contract claim, and Federal does not assert that the bad faith claims are somehow futile because there is not an assignable breach of contract claim. In fact, Federal fails to provide

any explanation linking its breach of contract argument with the futility of the First Amended Counterclaim. The Court therefore declines to deny leave to amend based on this argument.

### 3. Bad Faith Allegations

Federal argues that the bad faith claims asserted in the First Amended Counterclaim are futile because they are without factual support. Specifically, Federal maintains that such claims fail because: (1) "Federal satisfied all of its duties to Richardson when it tendered the statutory minimum limit of insurance to Defendants"; and (2) and Federal did not owe a duty to defend or indemnify Richards because the policies at issue "do not provide coverage for anyone who did not have Multimedia's permission to use the van." (Pl.'s Supplemental Reply in Opp'n to Defs.' Mot. for Leave to File First Am. Countercl. 6.)

The First Amended Counterclaim includes the following allegations: (1) Conover was "given broad and unfettered discretion to use the van he was issued by [Multimedia] for business and personal use prior to the accident in question," (First. Am. Countercl. ¶ 29); (2) "[Multimedia] did not enforce any purported limitation on the ability of its employees to use company vehicles for personal use prior to the accident at issue," (*id.* ¶ 30); (3) "[Conover] gave permission to [Richardson] to operate the Multimedia van he was driving on the date and at the time of the accident in question" and Richardson "did not deviate at any time from the course and scope of this permission," (*id.* ¶¶ 32, 34); (4) "[Richardson] was and is an insured under the primary, umbrella and/or excess insurance policies issued by [Federal] to [Multimedia]," (*id.* ¶ 35); (5) "Federal refused to provide any compensation for Defendants' injuries and damages and completely denied all coverage under the policy including but not limited to coverage compelled by the Oklahoma Compulsory Insurance Law," (*id.* ¶ 38); (6) "Federal failed to complete a timely and thorough

investigation of the facts surrounding the accident in question and to construe the facts in the light most favorable to coverage," (*id.* ¶ 39); and (7) "Federal's refusal to provide a defense to [Richardson] was not reasonable, was reckless and was improper under the facts of the case," (*id.* ¶ 41).

Assuming the truth of Matteuzzi's factual allegations, the Court is unwilling to find Matteuzzi's bad faith claims to be futile so as to prevent amendment of the counterclaim. When viewed in a light most favorable to Matteuzzi, the allegations of the First Amended Counterclaim contain enough facts to state a plausible claim of bad faith sufficient to survive a motion to dismiss. *See Collins*, 245 F.R.D. at 507 (noting that a court may deny a motion for leave to amend based on futility when proposed amendment would not withstand Rule 12(b)(6) motion); *Schneider*, 493 F.3d at 1177 (noting court is to assume the truth of plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff in ruling on motion to dismiss under Rule 12(b)(6)). Federal's arguments in support of dismissal are largely based on Federal's assertion that Richardson did *not* have permission to drive the Multimedia van and is therefore not an "insured" under the policies in question. However, the allegations of Matteuzzi's counterclaim state that not only did Conover have permission from Multimedia to use the van for personal use, but that he gave explicit permission to Richardson to use the van on the date of the accident in question. Although Federal disputes these facts and offers conflicting testimony, the Court must assume the truth of Matteuzzi's factual allegations at this stage. The Court therefore declines to deny leave to file the First Amended Counterclaim on the basis that the bad faith claims asserted therein are so lacking in factual support that they are futile.

4. Statute of Limitations for Bad Faith Claims

Federal maintains that Matteuzzi's bad faith claims are futile because such claims are barred by the applicable two-year statute of limitations. *See Miller v. Liberty Mut. Fire Ins. Co.*, 191 P.3d 1221, 1227 (Okla. Civ. App. 2008) ("It is undisputed that the applicable limitations period [for a bad faith claim] is two years . . . ."). According to Federal, the bad faith claims accrued no later than December 6, 2006, the date of Federal's first letter to Richardson's attorney. Thus, Federal argues that even if the bad faith claims relate back to March 30, 2009, when Matteuzzi filed her original counterclaim, they are barred as untimely. Matteuzzi disputes Federal's contention, arguing that the bad faith claims are timely because the statute of limitations did not start to run until the judgments were entered in the Wagoner County lawsuits. Alternatively, Matteuzzi maintains that the bad faith claims accrued upon receipt of the April 11, 2007 letter.

At the outset, the Court rejects Matteuzzi's contention that the bad faith claims did not accrue until judgments were entered in the Wagoner County lawsuits. In assessing the timeliness of a bad faith claim, the "cause of action . . . arose when the insurer breached the implied duty to deal fairly and in good faith with its insured." *Trinity Baptist Church v. GuideOne Elite Ins. Co.*, 654 F. Supp. 2d 1316, 1325-26 (W.D. Okla. 2009) (citing *Lewis v. Farmers Ins. Co.*, 681 P.2d 67, 70 (Okla. 1983) and *Lee v. Phillips & Lomax Agency, Inc.*, 11 P.3d 632, 634 (Okla. 2000) (noting that limitations period begins to run at "the point in time a plaintiff can successfully prove the elements of a tort claim")); *see Consol. Grain & Barge Co. v. Structural Sys., Inc.*, 212 P.3d 1168, 1171 n.8 (Okla. 2009) (noting that a cause of action to recover damages for a tortious wrong accrues when all elements of the tort are present). In this case, Matteuzzi alleges Federal acted in bad faith when it "failed to unconditionally pay known minimum insurance coverage," (First Am. Countercl. 11), and

13

refused to defend Richardson in the Wagoner County lawsuits, (*see id.* at 12-13). These allegations are premised on Federal's conclusion that Richardson was not an insured under the Federal policies and Federal therefore need not defend nor indemnify him. The bad faith claims accordingly accrued at the point in time when Federal rejected Richardson as an insured and refused to indemnify and defend him.[5]

In assessing whether Matteuzzi's bad faith claims would be subject to dismissal based on when Federal refused to defend and/or indemnify Richardson, the Court turns to the allegations of Matteuzzi's First Amended Counterclaim. Specifically, Matteuzzi's First Amended Counterclaim

---

[5] Matteuzzi argues it is well settled that a "bad faith cause of action does not accrue until a judgment is entered and becomes final," citing *Wirtz v. State Farm Mutual Automobile Insurance Company*, No. CIV-08-1062-F, 2009 WL 2163617, *7 (W.D. Okla. 2009), and various cases from other jurisdictions. (*See* Defs.' Supplemental Reply Suggestions in Supp. of Their Mot. for Leave to File First Am. Countercl. 8-9.) The Court finds Matteuzzi's reliance on these cases misplaced, however, as the rule announced in such cases relates to a different type of bad faith claim than is present in this case – namely, bad faith failure to settle an action within the policy limits. *See Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th Cir. 1982) (applying New Mexico law) (holding cause of action for *bad faith in failing to settle claim within policy limits* did not accrue until judgment was final); *Wirtz*, 2009 WL 2163617, at *7 (finding bad faith claim based on refusal to settle a claim accrued when excess liability was established against insured); *Vanderloop v. Progressive Cas. Ins. Co.*, 769 F. Supp. 1172, 1175 (D. Colo. 1991) ("[F]inal judgment establishing an insured's liability for an amount in excess of coverage constitutes the accrual date of a *bad faith action predicated on the insurer's failure to settle the underlying tort action . . . .*") (emphasis added); *Nungesser v. Bryant*, 153 P.3d 1277, 1285-86 (Kan. 2007) (finding suit against insurer for *bad faith failure to settle suit* could not be brought before insured's liability was established); *Jarvis v. Farmers Ins. Exch.*, 948 P.2d 898, 902 (Wyo. 1997) ("A cause of action by an insured against the insurer *for a failure, in bad faith, to settle a claim* will not accrue prior to the entry of a judgment against the insured in excess of policy limits.") (emphasis added); *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 140 n.20 (Utah Ct. App. 1992) (noting that insured's *bad faith cause of action for refusal to settle within policy limits* does not accrue until final disposition of the underlying claim against the insured). A bad faith claim based on an insurer's failure to settle a claim within policy limits differs from Matteuzzi's bad faith claims in that such a claim is not based on an insurer's refusal to defend or indemnify, as is at issue in this case. The Court therefore finds the cases cited by Matteuzzi inapposite.

14

alleges that Federal refused to defend and indemnify Richardson in its April 11, 2007 Letter. (*See* First Am. Countercl. 3 ("Federal declined to provide Richardson a defense or to indemnify him against any judgment entered against him in the underlying cases by way of letter dated *April 11, 2007*.") (emphasis added).) Assuming the truth of Matteuzzi's allegations and viewing them in the light most favorable to her, the Court finds that the bad faith claims would not be subject to dismissal based on statute of limitations grounds, as the "dates given in the [counterclaim] [do not] make clear that the right sued upon has been extinguished." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1215 (D.N.M. 2010) (explaining that statute of limitations issue may be resolved on Rule 12(b)(6) grounds when dates of complaint "make clear that the right sued upon has been extinguished") (citing, *inter alia*, *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) and *Lee v. Rocky Mountain UFCW Unions & Employers Trust Pension Plan*, No. 92-1308, 1993 WL 482951, at *1 (10th Cir. Nov. 23, 1993) ("Because the critical dates appeared plainly on the face of [plaintiff's] complaint, we conclude that the statute of limitations defense was properly raised and resolved in the Rule 12(b) context.")) (further stating that "[w]hen a party has asserted a statute of limitations issue in a rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the plaintiff to determine whether the statute of limitations has run"). Rather, the date given in the counterclaim – namely, April 11, 2007 – would result in timely bad faith claims, as the initial counterclaim was filed less than two years later on March 30, 2009.[6]

---

[6] The First Amended Counterclaim asserts claims that arose out of the conduct set forth in Defendants' original counterclaim, making the relation-back doctrine of Federal Rule of Civil Procedure ("Rule 15(c)") applicable. *See* Fed. R. Civ. P. 15(c) (stating that an amendment relates back to the date of the original pleading when, *inter alia*, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be

The Court notes the existence of the December 6, 2006 Letter and Federal's argument that it is this letter that started the clock on the bad faith claims. However, when assessing whether Matteuzzi's bad faith claims are futile, which requires use of the Rule 12(b)(6) lens, *see Collins*, 245 F.R.D. at 507, the Court must construe the facts in favor of Matteuzzi and look at the allegations of the First Amended Counterclaim. At this juncture, for the reasons outlined above, the statute of limitations does not render Matteuzzi's bad faith claims futile.

### B. Improper Purpose

Federal also argues that the Court should deny Matteuzzi leave to amend her counterclaim because the First Amended Counterclaim is offered for an improper purpose. According to Federal, Matteuzzi is bringing bad faith claims in order to "seek otherwise non-discoverable information and documents from Federal and Multimedia." (Pl.'s Obj. to Defs.' Mot. for Leave of Court to File Am. Countercl. 6.) Central to Federal's argument, which was made prior to Richardson's Assignment, is the contention that Matteuzzi has no standing to bring claims for bad faith. Given the subsequent assignment of claims by Richardson and the general premise that leave to amend shall be freely given, *see* Fed. R. Civ. P. 15(a)(2), the Court declines to deny Matteuzzi leave to amend on such a basis.

## V. Conclusion

For the reasons outlined herein, Defendant Paula Matteuzzi' Motion for Leave of Court to File First Amended Counterclaim (Doc. 73) is GRANTED, and Matteuzzi is ordered to file her First Amended Counterclaim within ten (10) days of the date of this Order. Because the filing of the First Amended Counterclaim will undoubtedly affect the deadlines currently in place, the Court strikes

---

set out – in the original pleading"). Indeed, Federal makes no argument to the contrary.

the current Scheduling Order and refers this matter to Magistrate Frank H. McCarthy for a scheduling conference. The Motion to Modify Scheduling Order (Doc. 106) is therefore granted insofar as it is consistent with this relief.

**ORDERED this 17th day of February, 2011.**

**TERENCE KERN**
**United States District Judge**